## Case No. 17,083.

### WALKER v. RAWSON et al.

[4 Ban. & A. 128.][1]

Circuit Court, D. Massachusetts. Feb., 1879.

PATENTS — MODE OF CUTTING SOLES FOR BOOTS AND SHOES.

1. The complainant's patent construed, to contain merely a direction to workmen to use a known tool in a skilful mode, well known in other arts, and in the same art, as applied to a somewhat different tool, to effect an old result, and, therefore, that it does not set out a patentable invention.

2. Letters patent No. 49,572, granted to Joseph H. Walker, August 22d, 1865, for an improved mode of cutting soles for boots and shoes, held, not to describe a patentable invention.

[This is a bill in equity by Joseph H. Walker against Daniel G. Rawson and others to restrain an infringement of certain letters patent granted to complainant.]

Browne & Holmes, for complainant.
A. K. P. Joy, for defendants.

LOWELL, District Judge. This suit in equity is brought for the infringement of the plaintiff's patent, No. 49,572, granted August 22d, 1865, for an improved mode of cutting soles for boots and shoes from whole sides of leather. The specification describes the old method to have been to cut the side of leather into strips, or "races," as they are technically called, wide enough to form the length of the required soles, and then to cut each strip by itself into soles by a die, which was reversed after each cutting. His mode, as described, is, to place the die upon the side of leather and cut one sole, then to reverse the die and draw it into such a position as to touch, or nearly touch, the former pattern at the toe, ball and heel, and cut the second; and so on, until the whole width of the side has been cut into soles;

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

and then to begin a new series of cuttings. as close as possible to the first, and arranged in the same order; and so on until the whole side is cut. Both modes are illustrated by drawings.

There is great economy in this mode of cutting,. as compared with what the patentee calls the old mode. A strip of the exact width necessary for the length of a sole will not allow the patterns to fit into each other, because they then overlap, and every other one would pass beyond the strip or race; and if the race were wide enough to allow this, there would be loss at the ends of the soles. This loss is not made by the new method, because the second series is made to fit into the first and take up the spare pieces.

The complainant is a manufacturer of boots and shoes, of large experience, who has some eighteen or twenty patents, all upon inventions of his own. He gives much interesting evidence concerning the growth of the art of manufacturing those articles on a large scale, and insists that he is the first person who used dies for cutting soles in any other way than upon a race of leather cut out in the form of a parallelogram, and of a width exactly equal to the length of a sole. Upon this point there is a vast mass of conflicting evidence. Dies began to be used at least twenty years before the date of the patent.

In his specification, the complainant describes a mode by which the operator may find out where to place his die for cutting the first sole of the second series, and this is the subject of the second claim in his patent. When the commissioner of patents rejected his application, he sent on affidavits to prove that this mode of beginning the second series was a discovery, and not an easy one to make. I do not understand that he now relies on the second claim at all, or that it is infringed. In my opinion the drawings show, on their face, that there is no practical difficulty in the matter, and I think the complainant's evidence proves as much.

It does seem to be proved that before 1863 the machines working by power were all adapted to cutting soles from races, and that the plaintiff first brought the method of cutting from a whole side into general notice, and that many intelligent manufacturers took licenses under this patent; which certainly tends to show that the process was supposed to be new. To be sure he had a machine which was patented; and the defendants insist that the licenses were for the machine, and that the mode of cutting was thrown in. The plaintiff declares the very reverse to be true.

The claim in question here is the first: "Cutting up sides of leather into soles for boots and shoes, in the manner described, and as shown in Sheet 1 of the drawings." This claim is not limited to cutting by power, but applies to all cutting with dies. If the claim is construed to include. in the mode of cutting, the particular method of finding where to put the die for the beginning of the second series of soles, it is not infringed. If it means that a whole side of leather must be employed, it could readily be evaded. I understand the construction given by the counsel for the complainant to be for cutting at least two series of soles, so that the saving of material at the sides and the ends will both be taken advantage of. As a series may consist of two, the patent is for cutting four soles or more, touching at the sides and ends, as described.

The great discovery, as I understand the plaintiff to view it, was, that races may be dispensed with. I do not see any difficulty in practising the invention on a race or strip of leather, if the die is laid with its longer axis lengthwise of the race. Whether this would be economical or not would depend on the comparative dimensions of the sole and the race. The invention, therefore, seems to be to reject the mode of cutting by races of the precise width necessary for the length of a sole, and used by always laying the die across the race.

No doubt any new machinery, adapted to cutting whole sides or pieces of a shape different from the old races, would be patentable. But, in my opinion, the plaintiff cannot, without relying on particular means or machinery, monopolize a general mode of presenting old material to an old tool, in such a mode as to make it hold out as long as possible, by adapting the presentation of his material to the shape of his tool. or the positions of his tool to the shape of his material.

In Brown v. Piper, 91 U. S. 37, it is said by the court that judicial notice may be taken of facts of common knowledge in the arts. This has been called a new departure of the court; but it seems a useful and reasonable one, if reasonably used. In Snow v. Taylor [Case No. 13,148]. I said, speaking for Mr. Justice Clifford and myself, "It is a matter of common knowledge, and is mentioned by some of the witnesses. that in various branches of manufacture, material has been cut in such a way as to bring the wide part of one article of the manufacture against the narrow part of the next, so as to save material." We held, in that case, that a patent could not be sustained for "the method of cutting two or more series of collars side by side, from a strip of paper or other suitable material, in such a manner that the wide parts of the collar of one series shall come opposite to the narrow parts of the adjoining series."

In the present case it is proved that in the old mode of cutting by hand. the shoemaker would save material by marking out his soles so that they should fit each other. very much as the dies are put against each other by the plaintiff. It seems that, owing to the hardness of the leather, a shoe knife will not cut an outer sole so accurately that it will go into the shoe without trimming, and the plaintiff says that the knife cuts only "sole-blanks," and not soles. This does not appear to be true of inner soles. If it were. the mode of operation is the same, and a relative economy of the same sort is gained. A die is a pattern and a knife

combined, and its operation is more perfect upon outer soles than that of the knife; but, so far as the placing of the pattern is concerned, there is no difference in the operations.

Whatever may be the fair effect of most of the very conflicting evidence of precise anticipation with dies, this, I think, is established: That almost every manufacturer sometimes had pieces of leather which he worked up into soles, especially inner soles, with dies, which could not conveniently be "raced"; and I do not think it needs much testimony to prove that he would use his dies, on such pieces, in such a way as to make the greatest number of soles out of it.

Upon the whole, I am of opinion that no patentable invention is set out in this specification and claim. It contains merely a direction to workmen to use a known tool in a skilful mode, well-known in other arts, and in this art, as applied to a somewhat different tool, to effect an old result. I am not aware that a patent has ever been sustained for such an invention.

When a certain process of "canning" had been applied to beans and peas, it was held that its application to green corn could not be patented, although much study and experiment had been expended to discover that the old process would apply to the new article. Sewall v. Jones, 91 U. S. 171. Where a certain mode of fastening had been applied to pickaxes, it was held not patentable for anchors. Brunton v. Hawkes, 4 Barn. & Ald. 541. A "fish" for the timbers of bridges, anticipated a like fish for rails of a railway, though its mode of operation was somewhat different. Harwood v. Great Northern Ry. Co., 11 H. L. 654. A process for finishing cotton and linen threads could not be patented when applied to threads of wool and hair, though experiment was necessary to discover its applicability to them. Brook v. Aston, 8 El. & Bl. 478. So of many other cases where the adaptation was new and useful, but no new means were devised, and no new result was reached, or only one which had been attained before · in analogous arts. Bill dismissed with costs.